UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CYNTHIA MORALES,

                        Plaintiff,

          -against-

THE CITY OF NEW YORK; MICHAEL
DONNELLY (Tax ID # 883801);
THOMAS AIELLO (Tax ID #868427);
ANNABELLE NIEVES (Tax ID #
876842), SEAN O'TOOLE (Tax ID#
873810), ROBERT T. JOHNSON,
NANCY D. KILLIAN; "JOHN
DOE(S), 1-10" and "JANE DOE(S),
1-10", unidentified police officers
employed by The New York City Police
Department, in their official capacity
as police officers, and in their individual
capacity; "DICK MOE(S), 1-10" and
"RUBY POE(S), 1-10", unidentified
assistant district attorneys employed
by The Bronx District Attorney's Office,
in their official capacity as assistant
district attorneys, and in their individual
capacity,

                    Defendant(s).

-------------------------------------------------------------------X

**AMENDED**
**COMPLAINT**

Civil Action No:
14 CV 2896 JMF

<u>JURY TRIAL</u>
<u>DEMANDED</u>

      The plaintiff, Cynthia Morales, by and through her attorney, DAVID M.

HARRISON, ESQ., complaining of the defendants, states as follows:

<u>INTRODUCTION</u>

    1.  The plaintiff, Cynthia Morales, is the natural daughter of an individual

named Eric Glisson, a/k/a Eric Field (hereinafter referred to as "Eric Glisson").

2.   Eric Glisson was wrongfully convicted in 1997 of felony murder in connection with the shooting death of an individual named Baithe Diop, a livery cab driver.  Mr. Glisson was sentenced to an indeterminate term of imprisonment of 25 years to life and spent approximately 18 years in jail for a murder he did not commit, and for which he was not connected in any way.

3.   Eric Glisson's conviction was not the result of innocent or even negligent mistakes, and was not accidental, but was the direct result of the conduct of a group of New York City Police Department officers and detectives, including defendants Michael Donnelly, Thomas Aiello, Annabelle Nieves and Sean O'Toole, as well as New York City Police Department officers and detectives as yet unnamed, who fabricated evidence and proffered knowingly false witness testimony.

4.   Eric Glisson's continued imprisonment was also the result of a willful disregard of "evidence", consisting of fabricated and coerced witness statements, as well as contradictory forensic evidence, upon which the Office of the Bronx District Attorney relied upon in the prosecution of Eric Glisson, of which prosecuting attorneys, including Bronx District Attorney Robert T. Johnson, and Assistant District Attorney Nancy D. Killian, as well as assistant district attorneys operating on behalf of the Bronx County District Attorney's office as yet unnamed, completely failed to properly investigate or verify; while willfully disregarding evidence which absolved Eric Glisson of any responsibility for the 1997 murder of Baithe Diop.

5.   That as a result of defendants' wrongful conduct, plaintiff Cynthia Morales, was deprived of the association of her father, Eric Glisson, for a period of approximately

18 years.

## JURISDICTION

6.  This action arises, in part, under the Fourteenth Amendment to the United States Constitution, as well as the Bill of Rights; as well as pursuant to violation of plaintiff's civil rights, pursuant to 42 U.S.C. §1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985 and 42 § U.S.C. 1986.  Plaintiff's damages further arose by reason of the false arrest, malicious prosecution and the wrongful imprisonment of her father, Eric Glisson, by defendant The City of New York, its agents, servants, employees and representatives, including those defendants who were members of the New York City Police Department: **(i)** Michael Donnelly (Tax ID # 883801); **(ii)** Thomas Thomas Aiello (Tax ID #868427); **(iii)** Anabelle Nieves (Tax ID # 876842); **(iv)** Sean O'Toole ((Tax ID# 873810), as well as members of the New York City Police Department (NYPD) yet to be named; as well as the malicious prosecution of those defendants who were employees and/or affiliated with the Office of the Bronx District Attorney, including **(a)** Robert T. Johnson, District Attorney; **(b)** Nancy D. Killian, Assistant District Attorney, as well as assistant district attorneys affiliated with and/or working on behalf of the Office of the Bronx District Attorney, yet to be named.  The Court has subject matter jurisdiction of all claims in connection therewith.

<u>VENUE</u>

7.   The subject action was removed from state court (Supreme Court of the State of New York, County of Bronx), on April 23, 2014, on the basis that this is an action over which the District courts have original jurisdiction, pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1441.

<u>PARTIES</u>

8.   The plaintiff, Cynthia Morales, was at all times material to this Complaint, a citizen and resident of the State of New York.  Plaintiff is currently a resident of the County of Bronx, City and State of New York.

9.   The defendant, The City of New York, hereinafter referred to as "defendant NYC", is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York.

10.   That at all times hereinafter mentioned and prior thereto, defendant NYC was and still is a domestic municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

11.   That on or about the 13th day of March, 2013, a Notice of Claim was duly served and filed with the office of the Comptroller/Comptroller of the City of New York, pursuant to the applicable provisions of the General Municipal Law, which Notice of Claim was served and filed within ninety (90) days after the cause of action and before the commencement of the action, and this action was commenced against defendant NYC within one year and ninety days after accrual of this action.

12.   That on or about the 13th day of March, 2013, a Notice of Claim was duly served and filed with the office of the Comptroller/Comptroller of the City of New York, which Notice of Claim was served and filed within ninety (90) days after the cause of action, and before the commencement of the action, and the action was commenced within one year and ninety days after the accrual of this cause of action, and as such, plaintiff has satisfied all conditions precedent to lawful commencement of the within action against defendant NYC.

13.   That on the 20th day of August, 2013, the plaintiff, Cynthia Morales, appeared for a 50-h hearing; and as such plaintiff has satisfied all conditions precedent necessary for commencement of the subject action against defendant NYC.

14.   That the defendant, Michael Donnelly (Tax ID # 883801), hereinafter referred to as "defendant Donnelly", at all times relevant to this Complaint, was a duly appointed and acting police officer of the New York City Police Department, an agency of defendant NYC, with the rank of detective acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York.

15.   That the defendant, Thomas Aiello (Tax ID #868427), hereinafter referred to as "defendant Aiello", at all times relevant to this Complaint, was a duly appointed and acting police officer of the New York City Police Department, an agency of defendant NYC, with the rank of detective acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New

York and the State of New York.

16. That the defendant, Annabelle Nieves (Tax ID # 876842), hereinafter referred to as "defendant Nieves", at all times relevant to this Complaint, was a duly appointed and acting police officer of the New York City Police Department, an agency of defendant NYC, with the rank of detective acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York.

17. That the defendant, Sean O'Toole (Tax ID # 873810), hereinafter referred to as "defendant "O'Toole", at all times relevant to this Complaint, was a duly appointed and acting police officer of the New York City Police Department, an agency of defendant NYC, under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York

18. That the defendants, "John Doe(s), 1-10" and "Jane Doe(s), 1-10", unidentified police officers employed by the New York City Police Department, in their official capacity as police officers, and in their individual capacity, were duly appointed and acting police officers of the New York City Police Department, an agency of defendant NYC, under color of law and in their individual capacities within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York.

19. That at all times relevant, defendant NYC, its agents, servants, employees, and/or representatives hired, employed, assigned, designated, trained, supervised,

monitored, placed, directed and/ otherwise controlled certain individuals employed

and/or serving in the capacity as police officers and/or detectives for defendant NYC,

including defendants Donnelly, Aiello, Nieves and O'Toole, as well as defendants

"John Doe(s)"/"Jane Doe(s)", in their official capacity as police officers and police

detectives, and in their individual capacity.

20.   That the defendant, Robert T. Johnson, hereinafter referred to as

"defendant Johnson", at all times relevant to this Complaint, was acting as the District

Attorney on behalf of the Bronx District Attorney's Office, an agency of defendant

NYC, under color of law and in his individual capacity, within the scope of

employment pursuant to the statutes, ordinances, regulations, policies, customs and

usage of the City of New York and the State of New York.

21.   That at all times relevant to this Complaint, defendant Johnson, in his

capacity as District Attorney on behalf of the Bronx District Attorney's Office, was

an employee, agent, servant and/or representative of defendant NYC.

22.   That the defendant, Nancy D. Killian, hereinafter referred to as "defendant

Killian", at all times relevant to this Complaint, was acting as an Assistant District

Attorney on behalf of the Bronx District Attorney's Office, an agency of defendant

NYC, under color of law and in her individual capacity, within the scope of employment

pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City

of New York and the State of New York.

23.   That at all times relevant to this Complaint, defendant Killian, in her

capacity as an Assistant District Attorney on behalf of the Bronx District Attorney's

Office, was an employee, agent, servant and/or representative of defendant NYC.

24.   That the defendants, "Dick Moe(s), 1-10" and "Ruby Poe(s), 1-10", unidentified assistant district attorneys employed by The Bronx District Attorney's Office, in their official capacity as assistant district attorneys, and in their individual capacity, hereinafter referred to as "defendants Dick Moe(s)/"Ruby Poe(s)", were operating under the employ of defendant NYC; and were employed in such capacity as prosecuting attorneys and/or prosecutors by defendant NYC.

25.   That at all times relevant to this Complaint, defendants Dick Moe(s)/ Ruby Poe(s), in their capacity as Assistant District Attorneys on behalf of the Bronx District Attorney's Office, were employees, agents, servants and/or representatives of defendant NYC.

## NATURE OF THE ACTION

26.   This action arises from the false, unlawful, malicious and wrongful loss of fundamental rights, as well as the deprivation of liberty suffered by the plaintiff, Cynthia Morales, by reason of defendants' false arrest, wrongful imprisonment and malicious prosecution of her natural father Eric Glisson, a/k/a Eric Field (hereinafter referred to as "Eric Glisson").  As a result of defendants' wrongful conduct, the plaintiff, Cynthia Morales, suffered deprivation of and wrongful interference with the fundamental right to live as a family,  as guaranteed by the Constitution of the United States, including the Fourteenth Amendment and the Bill of Rights.  The plaintiff, Cynthia Morales, further suffered deprivation of and wrongful interference with the fundamental right to live with and have family relations with a related

person, as guaranteed by the Constitution of the United States, including the Fourteenth

Amendment and the Bill of Rights.   The plaintiff, Cynthia Morales, further suffered

deprivation of and wrongful interference with the fundamental right to liberty,

as guaranteed by the Constitution of the United States, including the Fourteenth

Amendment and the Bill of Rights.   The plaintiff, Cynthia Morales, further suffered

personal injuries and psychological/emotional damages of a serious, severe and

permanent nature, by reason of defendants' false arrest, wrongful imprisonment and

malicious prosecution of said individual named Eric Glisson, a/k/a Eric Field, hereinafter

referred to as "Eric Glisson".   The plaintiff, Cynthia Morales, further suffered personal

injuries and psychological/emotional damages of a serious, severe and permanent nature,

by reason of defendants' negligence relating to the arrest, imprisonment and prosecution

of her natural father.   The plaintiff, Cynthia Morales, further suffered a violation of civil

rights, pursuant to 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985 and 42 U.S.C.

§ 1986.   The plaintiff, Cynthia Morales, also makes claim for loss of services, including

loss of parental services, by reason of defendants' wrongful conduct herein referenced.


## FACTS UNDERLYING PLAINTIFF'S CLAIMS FOR RELIEF


27.   That on January 19, 1995, shortly before 4:00 A.M, an individual named

Baithe Diop ("Diop"), a livery cab driver, was shot twice and robbed by two male

passengers, Jose Rodriguez ("Rodriguez") and Gilbert Vega ("Vega").   The shooting

and robbery occurred while Mr. Diop was driving Rodriguez and Vega from

Manhattan to the Bronx where Mr. Vega resided.

28.   As Diop was operating his livery cab upon Croes Avenue, in the County of Bronx, City and State of New York, Rodriguez and Vega began their robbery by instructing Diop to bring his vehicle to a stop in front of premises commonly known and designated as 750 Croes Avenue, Bronx, NY; and across the street from the school yard and handball courts of scholastic premises commonly known and designated as P.S. 107. An argument ensued between Diop and Rodriguez with Vega, which resulted in both Rodriguez and Vega shooting Diop once from the back seat of said livery vehicle.  The ballistics and medical examiner confirmed the location of the entry wounds and the use of two weapons involved.

29.   After the shooting, Vega took cell phone, at which time both he and Rodriguez exited said livery vehicle, and ran across the street and down Croes Avenue. The livery cab, with Diop either dying or already dead inside, remained in drive and continued slowly down Croes Avenue, ultimately coming to a stop after side swiping multiple cars and hitting a dumpster several hundred feet down Croes Avenue.

30.   There were two residents and/or occupants of 750 Croes Avenue who were were witnesses to this shooting incident: Juan Molina and Johnetta Lyons.  Juan Molina, called 911 when he heard the shooting from his apartment and looked out his window to see two men running from the scene.  Johnetta Lyons also heard the shooting and thereafter saw two men running from the scene.  There were no other known witnesses to the occurrence.

31.   After the robbery and shooting, Vega and Rodriguez used Diop's cell phone to make multiple calls before they ultimately discarded such phone.  Records of these phone calls were later obtained by the police.  Such records revealed that several of these

calls were made to family members and known associates of both Vega and Rodriguez. At such time,  Vega and Rodriguez were known members of the "Sex Money Murder Gang" ("SMM Gang") which operated in that part of the Bronx where the murder of Diop occurred.

32.   A murder investigation was subsequently initiated by the NYPD.  Defendant Donnelly, a police officer and police detective working out of the 43rd police precinct, was assigned as the "lead investigator" on said investigation.  Despite the fact that: **(i)** the two eyewitnesses at the scene of the shooting in front of 750 Croes Avenue saw only two men running from the scene, and, **(ii)** that Diop's cell phone records revealed calls having subsequently been made to family members and known associates of both Rodriguez and Vega; and, **(iii)** that both Vega and Rodriguez were known members of the SMM Gang, which operated in that part of the Bronx where the murder of Diop occurred, defendant Donnelly, as well as other members of the New York City Police Department assigned to such murder investigation, including defendants Aiello, Nieves and O'Toole, refused to follow or pursue such leads.

33.   In late January of 1995, a homeless woman named Miriam Taveras ("Taveras") was living temporarily with the Gomez Family, at premises commonly known and designated as 811 Noble Avenue, Bronx, NY, which was located in the same Bronx neighborhood where the shooting of Mr. Diop occurred.  Taveras was well known in the neighborhood as a drug addict, whose use of illegal drugs included marijuana and crack.  Shortly following the Diop murder, Taveras had been forced to call the police due to a fight that had broken out between her 12 year old son Jonathan, and one of the young Gomez boys.

34.   As a result of the fight between her son and one of the Gomez boys, Taveras realized that the Gomez family was going to request that she and her son leave their apartment.  As such, Taveras began to cooperate with members of the NYPD affiliated with the 43rd precinct of the New York City Police Department who were investigating Mr. Diop's murder.  Taveras concocted a plan involving her offering knowingly false testimony concerning the murder of Diop (who Taveras knew as "the cab driver), to said New York City police officers, in hope of receiving police assistance in helping her to find housing for her and her son. Taveras confided in both 14 year old Hanley Gomez, Jr. and 16 year old Cathy Gomez, about this plan.  She asked both of these individuals to accompany her to the 43rd Precinct so she could talk to the police about both the murder of the cab driver and receiving assistance for herself and her son. The initial meeting between Taveras and NYPD officers concerning the Diop murder occurred at the 43rd Precinct station house in late January of 1995, and continued into mid February of such year.

35.   The meetings between members of the NYPD and Taveras, which also involved Hanley Gomez, Jr. and Cathy Gomez, were led by defendant Donnelly, and participated in by defendants Aiello and Nieves.  Over the course of these meetings, defendants Donnelly, Aiello and Nieves provided Taveras, Hanley Gomez, Jr. and Cathy Gomez with information concerning the murder of Mr. Diop on January 19, 1995; as well as with information concerning the murder of an individual named Denise Raymond which had occurred on January 17, 1995.  Such information was provided by defendants Donnelly, Aiello and Nieves for the purpose

of having Taveras, Hanley Gomez, Jr. and Cathy Gomez provide knowingly false

statements and evidence implicating five young adult males from the local Bronx

neighborhood (including Eric Glisson), as well as a total stranger, Cathy Watkins,

in the Diop and Raymond murders, which defendants Donnelly and Aiello theorized

were part of a murder conspiracy conceived and directed by an individual named Charles

McKinnon ("McKinnon"), which was connected with illegal drug dealing (McKinnon

was subsequently indicted and tried for the Diop and Raymond murders, but was

acquitted).

36.   While Taveras was a willing participant in providing false statements and

false testimony for use by defendants Donnelly and Aiello in making their cases for the

Diop and Raymond murders, Hanley Gomez, Jr. and Cathy Gomez, who were merely

infants at the time, were intimidated, threatened and coerced by defendants Donnelly and

Aiello into making such false statements and rendering false testimony.

37.   The threats made by defendants Donnelly and Aiello to Hanley Gomez,

Jr. and/or Cathy Gomez, included threats of jail to Hanley Gomez, Jr. (who at the time

was charged with a robbery), as well as threats to implicate Hanley Gomez, Jr. in the

Diop and Raymond murders.  There was also threats made by defendants Donnelly

and Aiello to Hanley Gomez, Jr. and/or Cathy Gomez relating to their parents (who

at such time were out of prison, and on parole and/or probation).

38.   At the time of these meetings occurring at the 43rd Precinct, Hanley

Gomez, Jr. and Cathy Gomez had been in the United States for only approximately

three years, having recently moved from the Dominican Republic.  Neither Hanley

Gomez, Jr. or Cathy Gomez speak English very well; nor could either of them read

or write English.  Nevertheless, they were coerced by defendants Donnelly, Aiello and

Nieves into signing written statements concerning the Diop and Raymond murders,

which were written in English by said defendants.  Neither Hanley Gomez, Jr. or Cathy

Gomez were ever provided with translations of such written statements; nor did they even

know the contents of such statements that they were forced by defendants Donnelly,

Aiello and Nieves to sign.

     39.    The coerced and knowingly false written statements executed by Hanley

Gomez, Jr. and Cathy Gomez, as well as the knowingly false statements provided by

Taveras, were all used to obtain the indictment of Eric Glisson, for the murder of Baithe

Diop.  None of the attorneys assigned to the prosecution of Eric Glisson from the office

of the Bronx District Attorney, including defendants Johnson and Killian, as well as an

attorney named Daniel McCarthy who was assigned to such case by defendant Johnson,

made any efforts to verify the credibility of truthfulness of these statements.

     40.    On February 3, 1995, Eric Glisson was arrested by defendant O'Toole for

the murder of Baithe Diop.

     41.    On March 6, 1995, Eric Glisson was indicted for the murder of Baithe Diop,

along with five other individuals: Cathy Watkins, Michael Cosme, Carlos Perez, Devon

Ayers and Israel Vazquez, pursuant to Indictment 1086/95, Bronx County.

     42.    During the period from the end of January, 1995, and extending to the date

that Eric Glisson was indicted for the murder of Diop (March 6, 1995), defendants

Donnelly, Aiello and Nieves, as well as members of the NYPD yet to be named,

continued to work with Taveras to fabricate her testimony against Eric Glisson, as well as

against Cathy Watkins, Michael Cosme, Carlos Perez, Devon Ayers and Israel Vasquez.

Taveras appeared before the grand jury on at least three occasions from February 3, 1995 to March 6, 1995, to elaborate upon her testimony and to provide additional testimony relating to the murders of Baithe Diop and Denise Raymond.

43.   During the period from the end of January, 1995 and extending to the date that Eric Glisson was indicted for the murder of Diop (March 6, 1995), defendants Donnelly, Aiello and Nieves, as well as members of the NYPD yet to be named, continued to coerce and intimidate Hanley Gomez, Jr. and Cathy Gomez, into providing coerced statements and coerced testimony against Eric Glisson, as well as against Cathy Watkins, Michael Cosme, Carlos Perez, Devon Ayers and Israel Vasquez, relating to the murders of Baithe Diop and Denise Raymond.  Cathy Gomez has stated that defendant Donnelly continued to provide both her and Taveras with additional details of the crimes each time they met with hm. Hanley Gomez, Jr. has stated that he was coerced and intimidated into signing two statements at the 43rd Precinct relating to the Diop and Raymond murders by defendant Donnelly, as well as other NYPD officers; at which time Hanley Gomez, Jr. was entirely unaware as to the contents  of these statements when he was made to sign them as a 14 year old boy, while his ability to read English was virtually non-existent.

44.   Both Hanley Gomez, Jr. and Cathy Gomez have stated that during the period that they were have meetings with defendants Donnelly, Aiello and Nieves, defendant Donnelly was giving sums of money to their mother; with such sum sometimes being as much as $100.00.  Both Hanley Gomez, Jr. and Cathy Gomez have also stated that they believe defendant Donnelly gave money to Taveras, and that the NYPD subsequently arranged for Taveras and her son, Jonathan, to obtain

public housing.

45.   The murders of Baithe Diop and Denise Raymond resulted in three

separate trials.  On or about December 9, 1996, Israel Vazquez, Michael Cosme,

Carlos Perez and Devon Ayers went to trial in connection with both murders.

Both Taveras and Cathy Gomez testified and provided perjured testimony

against said individuals.  Defendant Donnelly also knowingly testified falsely in

support of the testimony given by both Taveras and Cathy Gomez; as well as in

support of both his and defendant Aiello's contrived conspiracy theory linking

the Diop and Raymond murders.  Defendant Donnelly also misled the trial court

about a critical security tape at Denise Raymond's workplace.  If the truth about

the actual contents of this security tape been made known at the trial, it would

have destroyed the credibility of the prosecution's claim that the murders of Baithe

Diop and Denise Raymond were linked; and that both murders were a product

of a conspiracy initiated and directed by Charles McKinnon (who had also been

indicted; and was standing trial separately).  None of the prosecuting attorneys

assigned to such murder case from the office of the Bronx District Attorney, including

defendants Johnson and Killian, took any measures to acknowledge the contents of

this security tape; and willfully ignored what was actually evidenced by such tape.

This is established by the fact that the office of the Bronx District Attorney was later

forced to admit that defendant Aiello had lied in failing to reveal that he had been

in possession of said security tape, which showed that McKinnon was not even present

at Denise Raymond's place of workplace during what was considered a critical

time relating to her murder, and well as the link to the murders of Raymond and Diop.

This concession on the part of the office of the Bronx District Attorney even served to entirely discredit one of the chief prosecution witnesses, Kim Alexander, who had testified at the trial of Israel Vazquez, Michael Cosme, Carlos Perez and Devon Ayers

46.   In the absence of proper disclosure of the contents of the security tape, as well as defendant Aiello's efforts to conceal it, Israel Vazquez, Michael Cosme, Devon Ayers and Carlos Perez were convicted at trial for the murder of Denise Raymond.  All such individuals, except Israel Vazquez, were also convicted of the Baithe Diop murder, as a result of the perjured testimony of Taveras and Cathy Gomez, as well as the false and misleading testimony of defendants Donnelly and Aiello.

47.   Following his arrest and indictment, Eric Glisson was jailed at the Rikers Island prison facility where he remained incarcerated through the time of his trial in September of 1997.

48.   Defendants Donnelly, Aiello, Nieves and O'Toole did nothing to follow up on the leads created by Mr. Diop's cell phone records during the period of time between Eric Glisson's arrest (February 6, 1995) until the time of his trial in September of 1997 for the Baithe Diop murder.  A proper follow up on such leads would have clearly exposed the fallacy of the contrived conspiracy theory linking the Diop and Raymond murders, which defendants Donnelly and Aiello had concocted, with assistance from Taveras; and which was promoted through the coercion of Hanley Gomez, Jr. and Cathy Gomez, by defendants Donnelly and Aiello.

49.   Defendants Donnelly, Aiello and Nieves knew that Taveras had first

told them that she witnessed the Diop murder from a bathroom window of the apartment where she was staying with the Gomez family, located at premises commonly known and designated as 1691 Lafayette Avenue, Bronx, NY.  Defendants Donnelly, Aiello and Nieves also knew that given that the shooting of Mr. Diop had occurred in front of 750 Croes Avenue and across from the schoolyard of P.S. 107, such shooting could not have been visible to Miriam Taveras from the bathroom window at said location, or any other windows at the 1691 Lafayette Avenue apartment location.  None of the prosecuting attorneys assigned to such murder case from the office of the Bronx District Attorney, including defendants Johnson and Killian, took any measures to acknowledge the contents of this security tape; and willfully ignored this fact.  Although the location as to where Mr. Diop's livery vehicle came to a stop following the shooting would have been partially visible from such apartment location, defendants Donnelly, Aiello and Nieves knew that Taveras could not have witnessed the shooting from said apartment location, in the manner that she claimed.

50.    The grand jury testimony rendered by Miriam Taveras given during the murder trials of Eric Glisson and Cathy Watkins were also contradicted by forensic evidence of the gunshot wounds suffered by Diop, which was fully known by defendants Aiello, Donnelly, Nieves and O'Toole.  Such forensic evidence established that said gunshot wounds were inflicted by shooters situated in the back seat of Mr. Diop's livery vehicle, which was later confirmed by Rodriguez and Vega.  None of the prosecuting attorneys assigned to such murder case from the office of the Bronx District Attorney, including defendants Johnson and Killian, took any measures to acknowledge what was clearly shown by such forensic evidence.  Taveras falsely testified that the gunshots were

fired from the front of said taxi by Eric Glisson while situated in the passenger seat; and

by Michael Cosme while outside the vehicle on the passenger side.

51.   On October 28, 1997, Eric Glisson was wrongfully convicted in New York

City Criminal Court, Bronx County (New York State Supreme Court, County of Bronx)

on two counts of Murder in the Second Degree (N.Y. Penal Law Section 125.51(1) and

Section 125.51(3), in connection with the shooting death of Baithe Diop.  As a result

of said conviction, Mr. Glisson was sentenced to a term of twenty-five years to life in

prison.  Mr. Glisson remained confined in maximum security prisons within the New

York State Correction Department during the majority of such time.

52.   That at the time of the criminal conviction of plaintiff's father, Eric Glisson,

on October 28, 1997, the plaintiff, Cynthia Morales, was a two year old infant, having

been born on January 12, 1995.  That during the period of Mr. Glisson's confinement,

plaintiff would regularly visit her father in prison.  Plaintiff first visited her father as

both a baby and young infant by traveling with her mother, Tesha Garcia, to the prison

where her father was confined.  Between the age of approximately 5 and 12, plaintiff

visited her father in jail, by traveling with her mother or her great grandmother, Catherine

Glisson, with such visits lasting for approximately two hours.  Thereafter, between the

ages of 12 and 17, plaintiff regularly visited her father by traveling with either her

mother; her aunt, Cathy Glisson; or her great uncle, Clarence Glisson.

53.   During such visits with her father, Eric Glisson would tell plaintiff that he

was innocent and that he would be coming home soon.  Such visits would end by reason

of plaintiff becoming emotional and crying about her father's incarcerated status.

54.   Eric Glisson never gave up trying to establish his innocence.  He appealed

his conviction to the Appellate Division, but his appeal was denied based on the same false evidence that was used to convict him in the first place.  His request to appeal directly to the New York State Court of Appeals was also denied.  He filed a pro se motion for a new trial which was denied.  In or about 2002, Eric Glisson filed a petition for a writ of habeas corpus in federal Court which was denied during the latter portion of 2003.

55.    During the time of his incarceration, Eric Glisson sought to find evidence which would lead to the actual killers of Baithe Diop, through friends, family and his attorneys, in attempting to pursue any possible lead that might lead to the identity of the murders.

56.  In May of 2012, a letter written by Eric Glisson in an attempt to establish his innocence was received by an individual named John O'Malley, an investigator with the U.S. Attorney's Office for the Southern District of New York.  From the description of the Diop murder set forth within Mr. Glisson's letter, Investigator O'Malley recognized such crime as matching that of the robbery and shooting of a livery cab driver to which both Rodriguez and Vega had previously confessed to in connection with cooperation and plea agreements each had signed with the U.S. Attorney's office, pursuant to which they agreed to cooperate in the Office's Prosecution of members of the Sex Money Murder Gang, to which Rodriguez and Vega were also known members.

57.  Rodriguez and Vega had confessed to the shooting of a livery cab driver as far back as 2003.  Rodriguez and Vega had described the shooting as having taken place on Croes Avenue in the Bronx, sometime in late 1994 or early 1995.  At

such time in 2003, Investigator O'Malley contacted the NYPD at the 43rd Precinct (which covered Croes Avenue) for assistance in determining the identity of the victim and to ascertain if anyone had been charged and/or imprisoned for such crime.  Despite the facts that: **(i)** five people (Eric Glisson, Cathy Watkins, Michael Cosme, Devon Ayers and Carlos Perez) were in prison for the murder of Baithe Diop occurring on Croes Avenue on January 19, 1995; and, that **(ii)** the Diop murder had been linked by the NYPD to the murder of Denise Raymond occurring shortly before in the same area of the Bronx; and that, **(iii)** members of the NYPD 43rd Precinct and the Bronx Homicide Unit, including defendants Donnelly, Aiello, Nieves and O'Toole, had participated in three major homicide investigations and trials based on these crimes, the NYPD was unable to link the information provided by federal authorities to the murder of Baithe Diop.  Upon information and belief, the murder of Diop was the only one involving the shooting of a cab driver that occurred on Croes Avenue, in the Bronx during said relevant time period.  As a result of this inexplicable failure of NYPD to link the known confessions of Vega and Rodriguez to the Diop murder, Eric Glisson, as well as Cathy Watkins, Michael Cosme, Devon Ayers and Carlos Perez, remained in prison for another nine to ten years for a crime which they clearly did not commit.

58.   On August 10, 2013 Eric Glisson, by his attorney, filed a motion, pursuant to Section 440 of the Criminal Penal Law, seeking an order vacating his judgment of conviction and dismissing the indictment.  An Affidavit sworn to by Investigator O'Malley, dated July 30, 2012, was utilized by Mr. Glisson's attorney in support of the motion.  The inconsistent, perjured testimony rendered by Taveras, obtained by defendants Donelly, Aiello and Nieves was also utilized in support of such motion.

59.   On September 26, 2012, Honorable Elfaim Alvarado, J.S.C., issued a decision and order in which he directed that an evidentiary hearing be held on the issues of fact raised by Mr. Glisson in his motion, as well as that of a like motion made by the attorney for Cathy Watkins.  In response, the office of the Bronx District Attorney conducted a "reinvestigation" of the case involving the murders of both Diop and Raymond.  This investigation included in person questioning of Rodriguez and Vega, as well as the interviews by the Bronx District Attorney's office with other individuals.

60.   On October 24, 2012, during the course of said reinvestigation, the office of the Bronx District Attorney consented to an order by the Honorable Denis Boyle, J.S.C., pursuant to which the conviction of Eric Glisson was conditionally vacated, and the People of the State of New York were given 90 days to move to reinstate the conviction in which case a hearing would be held on the pending motions to vacate the convictions and dismiss the indictment.  As a result of said consent Order, Eric Glisson was released from prison.

61.   In early December of 2012, based upon their findings obtained during the reinvestigation of the subject murder case of Baithe Diop, the office of the Bronx District Attorney informed counsel for both Eric Glisson and Cathy Watkins that the Bronx District Attorney would consent to the subject Criminal Penal Law Section 440 motions, and would execute a consent order vacating the judgments of conviction as against Eric Glisson and Cathy Watkins, pursuant to Criminal Penal Law § 440.10(1)(g); and dismissing the indictments on which all charges against Eric Glisson and Cathy Watkins were based, pursuant to pursuant to CPL § 440.10(4), in connection with the

Diop murder.  A resultant consent order was executed by the Honorable Denis J. Boyle, J.S.C. on December 13, 2012.

62.   That plaintiff's father, Eric Glisson, was wrongfully imprisoned, under maximum security, following his conviction, for a period of approximately 17 years and 9 months, before such conviction was vacated, pursuant to the subject consent order rendered by the Honorable Denis J. Boyle, J.S.C., on December 13, 2012.

63.   That as a result of the intentional deliberate actions of defendants Donnelly, Aiello, Nieves, and O'Toole, as well as the willful disregard of evidence exhibited by defendants Johnson and Killian, plaintiff's father was falsely arrested; wrongfully imprisoned; and maliciously prosecuted by defendants for a crime which defendants knew, or clearly should have known, he did not commit.  Such action constituted an intentional and willful disregard for natural family members of those individuals arrested, imprisoned and prosecuted for the Baithe Diop murder, including Eric Glisson; and as such, the plaintiff, Cynthia Morales, was wrongfully deprived of the right to experience a familial relationship with her father during virtually all of the years of her childhood and infancy.

64.   That as a result of her father being falsely arrested, wrongfully imprisoned, and maliciously prosecuted by defendants for a crime which defendants Johnson and Killian failed to properly investigate, the plaintiff, Cynthia Morales, was wrongfully deprived of the right to experience a familial relationship with her father during virtually all of the years of her childhood and infancy.

65.   That the plaintiff, Cynthia Morales, was wrongfully deprived of the companionship, company, guidance, and direction of her father, Eric Glisson, during

virtually all of the years of her childhood and infancy, as a result of her father being falsely arrested, wrongfully imprisoned, and maliciously prosecuted by defendants for a crime  which defendants knew, or clearly should have known, he did not commit.

66.   That the plaintiff, Cynthia Morales, was wrongfully deprived of the fundamental right to live as a family with an individual to which plaintiff is related, and to be able to engage in family relations therefrom, during virtually all of the years of her childhood and infancy, as a result of her father being falsely arrested, wrongfully imprisoned, and maliciously prosecuted by defendants for a crime which defendants knew, or clearly should have known, he did not commit.

67.   That the plaintiff, CYNTHIA MORALES, was wrongfully deprived of of the fundamental right to liberty during virtually all of the years of her childhood and infancy, as a result of her father being falsely arrested, wrongfully imprisoned, and maliciously prosecuted by defendants for a crime which defendants knew, or clearly should have known, he did not commit.

68.   That upon information and belief, and at all times pertinent hereto, defendant, NYC, its agents, servants, employees and/or representatives, maintained a system of review of police conduct; and permitted and tolerated a pattern and practice of wrongful and unreasonable conduct rendered by NYPD officers and police detectives, including defendants Donnelly, Aiello, Nieves and O'Toole, as well as members of the NYPD yet to be named,

69.   That the acts, omissions, systematic flaws, policies, and customs of the defendant, its agents, servants, employees and/or representatives, including defendants Donnelly, Aiello, Nieves and O'Toole, as well as members of the NYPD yet to be

named, resulted in said defendants  wrongfully, knowingly, unlawfully and falsely

charging, arresting and prosecuting plaintiff's father, Eric Glisson, for committing

a crime which defendants knew he did not commit; resulting in Mr. Glisson's

subsequent imprisonment for a period of approximately 17 years and 9 months,

70.   That upon information and belief, and at all times pertinent hereto,

defendant, NYC, its agents, servants, employees and/or representatives, have

maintained a system of review of prosecutorial misconduct which is so untimely

and cursory as to be ineffective; and permitted and tolerated a pattern and practice

of wrongful and unreasonable prosecutorial conduct rendered by prosecuting

attorneys and prosecutors, including defendants Johnson and Killian, and certain

assistant district attorneys affiliated with and/or serving on behalf of the office

of the Bronx District Attorney yet to be named, resulted in said defendants

wrongfully, prosecuting plaintiff's father, Eric Glisson, for committing a crime

which defendants knew, or should have known, he did not commit; resulting in

Mr. Glisson's subsequent imprisonment for a period of approximately 17 years and

9 months.

71.   That as a result of the wrongful conduct perpetrated by defendants herein,

the plaintiff, CYNTHIA MORALES, suffered deprivation of constitutional rights, as

well as loss of freedom, in addition to other damages.  Plaintiff also suffered physical

and psychological trauma, shock, debasement, fright, great disgrace, embarrassment,

loss of self esteem, emotional harm and humiliation as a result of defendants'

actions herein referenced.

<u>COUNT ONE</u>

**LOSS OF FUNDAMENTAL RIGHTS
GUARANTEED BY THE FOURTEENT
AMENDMENT AND THE BILL OF RIGHTS**

72.   That plaintiff repeats, reiterates and realleges each and every allegation

contained in the preceding paragraphs, with the same force and effect as if set forth

more fully herein.

73.   That as a result of the aforementioned actions, including false and wrongful

arrest; false and wrongful imprisonment; and malicious and wrongful prosecution

of plaintiff's father, Eric Glisson, by defendant NYC, its agents, servants, employees

and representatives, including defendants Donnelly, Aiello, Nieves, O'Toole and

members of the NYPD yet to be named; as well as defendants Johnson, Killian, and

assistant district attorneys district attorneys affiliated with and/or serving on behalf of

the office of the Bronx District Attorney yet to be named, plaintiff Cynthia Morales was

deprived of the rights, privileges and immunities secured by the Constitution and laws

of the United States; including the Fourteenth Amendment and the Bill of Rights;

which constitutional rights include, but are not limited to, plaintiff's fundamental right

to live with her father, plaintiff's fundamental right to engage in familial relations

with her father; plaintiff's fundamental right to live with her father as a related

person; plaintiff's right to the intimate association of her father; and plaintiff's

fundamental right to liberty.

74.   That defendants herein referenced conduct was so excessive, so intentional,

so wrongful, so unnecessary, so improper, so reckless, and so objectively unreasonable

that it was not justified under any circumstances; and said individual defendants

herein, acting individually, and as agents, servants, employees and representatives

of defendant NYC, engaged in misconduct which constituted an intentional and

willful disregard for natural family members of Eric Glisson, including the plaintiff,

Cynthia Morales; and which misconduct was permitted and tolerated by defendant

NYC.

75.   That as a result of the herein referenced misconduct of defendants herein,

plaintiff Cynthia Morales suffered a loss of fundamental rights guaranteed by the

Constitution to the United States, including the Fourteenth Amendment and the Bill

of Rights.

76.   That as a result of the foregoing, plaintiff Cynthia Morales has suffered

immediate injury in the form of humiliation, embarrassment and suffering, by reason

of her father's arrest, conviction and resultant imprisonment

77.   That the false and wrongful arrest; false and wrongful imprisonment;

malicious and wrongful prosecution of plaintiff's father, Eric Glisson, committed by said

constituted an intentional, willful, malicious, reckless and/or grossly negligent disregard

for and/or deliberate indifference to the rights of Eric Glisson's natural family members,

including the plaintiff Cynthia Morales, which was known, or should have been known

to defendants; and which misconduct adversely affected plaintiff's physical and

emotional well-being.

## COUNT TWO

### VIOLATION OF CIVIL RIGHTS, PURSUANT TO 42 U.S.C. §1981; 42 U.S.C. § 1983; 42 U.S.C. 1985. AND 42 U.S.C. § 1986

78.   That plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as if set forth more fully herein.

79.   That as a result of the aforementioned actions, including false and wrongful arrest; false and wrongful imprisonment; and malicious and wrongful prosecution of plaintiff's father, Eric Glisson, by defendant NYC, its agents, servants, employees and representatives, including defendants Donnelly, Aiello, Nieves, O'Toole and members of the NYPD yet to be named; as well as defendants Johnson, Killian, and assistant district attorneys district attorneys affiliated with and/or serving on behalf of the Bronx District Attorney's Office yet to be named, plaintiff Cynthia Morales was deprived of the rights, privileges and immunities secured by the Constitution and laws of the United States; including the Fourteenth Amendment and the Bill of Rights; which constitutional rights include, but are not limited to, plaintiff's fundamental right to live with her father, plaintiff's fundamental right to engage in familial relations with her father; plaintiff's fundamental right to live with her father as a related person; plaintiff's right to the intimate association of her father; and plaintiff's fundamental right to liberty.

80.   That defendants herein referenced conduct was so excessive, so intentional,

so wrongful, so unnecessary, so improper, so reckless, and so objectively unreasonable

that it was not justified under any circumstances; and said individual defendants

herein, acting individually, and as agents, servants, employees and representatives

of defendant NYC, engaged in misconduct which constituted an intentional and

willful disregard for natural family members of Eric Glisson, including the

plaintiff, Cynthia Morales; and which misconduct was permitted and tolerated by

defendant NYC.

81.   That as a result of the herein referenced misconduct of defendants herein,

plaintiff Cynthia Morales suffered a suffered a wrongful and improper violation of

her civil rights, pursuant to 42 U.S.C. §1981; 42 U.S.C. 1983; 42 U.S.C. 1985;

and 42 U.S.C. 1986.

82.   That by reason of the foregoing, the plaintiff, Cynthia Morales, suffered

a violation of her civil rights, pursuant to 42 U.S.C. §1981; 42 U.S.C. 1983; 42 U.S.C.

1985; and 42 U.S.C. 1986, in that plaintiff was wrongfully deprived of the right to

experience a familial relationship with her father during all of the years  of her

childhood and infancy; and was wrongfully deprived of the companionship,

company, guidance, and direction of her father, Eric Glisson, during all of the years

of her childhood and infancy; and was wrongfully deprived of the fundamental right to

live as a family with an individual to which plaintiff is related, and to be able to engage

in family relations therefrom, during all of the years of her childhood and infancy;

and was wrongfully deprived of the fundamental right to liberty during all of the years

of her childhood and infancy; sustained serious, harmful and permanent injuries, all

by reason of the misconduct of defendants herein, which was so excessive, so intentional,

so wrongful, so unnecessary, so improper, so reckless, and so objectively unreasonable
that it was not justified under any circumstances; and said individual defendants
herein, acting individually, and as agents, servants, employees and representatives
of defendant NYC, engaged in misconduct which constituted an intentional and
willful disregard for natural family members of Eric Glisson, including the
plaintiff, Cynthia Morales.

## COUNT THREE

## NEGLIGENT INFLICTION
## OF EMOTIONAL DISTRESS

83.   That defendants herein referenced conduct was so excessive, so intentional,
so wrongful, so unnecessary, so improper, so reckless, and so objectively unreasonable
that it was not justified under any circumstances; and said individual defendants
herein, acting individually, and as agents, servants, employees and representatives
of defendant NYC, engaged in grossly negligent and reckless conduct which resulted
in the plaintiff having suffered emotional distress, emotional trauma and psychological
injury; and which misconduct was permitted and tolerated by defendant NYC.

84.   That the emotional distress, emotional trauma and psychological injury
suffered by the plaintiff, Cynthia Morales, was caused, in whole or in part, by the
negligent infliction of such damages by defendants.

85.   That by reason of the foregoing, the plaintiff, Cynthia Morales, was
caused to sustain serious, harmful and permanent injuries, has been and will be caused

great pain, shock, mental anguish, loss of normal pursuits and pleasures of life; in all to

plaintiff's damages, in an amount which exceeds the jurisdictional limits of all lower

courts which would otherwise have jurisdiction and which warrants the jurisdiction of

this Court.

## COUNT FOUR

### INTENTIONAL INFLICTION
### OF EMOTIONAL DISTRESS

86.   That defendants herein referenced conduct was so excessive, so intentional,

so wrongful, so unnecessary, so improper, so reckless, and so objectively unreasonable

that it was not justified under any circumstances; and said individual defendants

herein, acting individually, and as agents, servants, employees and representatives

of defendant NYC, engaged in deliberate and intentional conduct which resulted in

the plaintiff having suffered emotional distress, emotional trauma and psychological

injury; and which misconduct was permitted and tolerated by defendant NYC.

87.   That the emotional distress, emotional trauma and psychological injury

suffered by the plaintiff, Cynthia Morales, was caused, in whole or in part, by the

intentional infliction of such damages by defendants.

88.   That by reason of the foregoing, the plaintiff, Cynthia Morales, was

caused to sustain serious, harmful and permanent injuries, has been and will be caused

great pain, shock, mental anguish, loss of normal pursuits and pleasures of life; in all to

plaintiff's damages, in an amount which exceeds the jurisdictional limits of all lower

courts which would otherwise have jurisdiction and which warrants the jurisdiction

of this Court.

## COUNT FIVE

## STATE LAW MALICIOUS
## PROSECUTION CLAIM

89.   That plaintiff repeats, reiterates and realleges each and every allegation

contained in the preceding paragraphs, with the same force and effect as if set forth

more fully herein.

90.   That as a result of the aforementioned actions, including false and wrongful

arrest; false and wrongful imprisonment; and malicious and wrongful prosecution

of plaintiff's father, Eric Glisson, by defendant NYC, its agents, servants, employees

and representatives, including defendants Donnelly, Aiello, Nieves, O'Toole and

members of the NYPD yet to be named; as well as defendants Johnson, Killian, and

assistant district attorneys district attorneys affiliated with and/or serving on behalf of

the office of the Bronx District Attorney yet to be named, plaintiff Cynthia Morales was

deprived of the right to parental services of her natural father, including the right to

live with her father; the right to engage in familial relations with her father; the right

to live with her father as a related person; and the right to the intimate association of

her father; and plaintiff's fundamental right to liberty.

91.   That defendants herein referenced conduct was so excessive, so intentional,

so wrongful, so unnecessary, so improper, so reckless, and so objectively unreasonable

that it was not justified under any circumstances; and said individual defendants

herein, acting individually, and as agents, servants, employees and representatives of defendant NYC, engaged in misconduct which constituted an intentional and willful disregard for natural family members of Eric Glisson, including the plaintiff, Cynthia Morales; and which misconduct was permitted and tolerated by defendant NYC.

92.   That as a result of the herein referenced misconduct of defendants herein, plaintiff Cynthia Morales suffered a loss of fundamental rights guaranteed by the Constitution to the United States, including the Fourteenth Amendment and the Bill of Rights.

93.   That as a result of the foregoing, plaintiff Cynthia Morales has suffered immediate injury in the form of humiliation, embarrassment and suffering, by reason of her father's arrest, conviction and resultant imprisonment

94.   That the false and wrongful arrest; false and wrongful imprisonment; malicious and wrongful prosecution of plaintiff's father, Eric Glisson, committed by said constituted an intentional, willful, malicious, reckless and/or grossly negligent disregard for and/or deliberate indifference to the rights of Eric Glisson's natural family members,  including the plaintiff Cynthia Morales, which was known, or should have been known to defendants; and which misconduct adversely affected plaintiff's physical and  emotional well-being.

## COUNT SIX

**STATE LAW RESPONDEAT
SUPERIOR CLAIM AGAINST
THE CITY OF NEW YORK FOR
FALSE ARREST, MALICIOUS
PROSECUTION AND
WRONGFUL IMPRISONMENT**

95.   That plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as if set forth more fully herein.

96.   At all times relevant to this Complaint, the individual defendants acted as agents of, and in the scope of their employment, with defendant NYC.  The conduct by which defendants committed the tort of false arrest, malicious prosecution, and wrongful imprisonment, was undertaken while the individual defendants were on duty, and/or carrying out their routine investigative functions as New York City Police Department officers or detectives, or prosecuting attorneys for the office of the Bronx District Attorney; and engaging in such conduct would have been reasonably expected by their employer.

97.    Defendant NYC is liable for its agents' state law tort of false arrest, malicious prosecution and wrongful imprisonment under the doctrine of respondeat superior.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that judgment be entered as

follows:

    (A)    Declaratory relief as follows:

    1.  As to the First Cause of Action, a declaration that Plaintiff's fundamental right to live with her father, plaintiff's fundamental right to engage in familial relations with her father; plaintiff's fundamental right to live with her father as a related person; plaintiff's right to the intimate association of her father; and plaintiff's fundamental right to liberty, under the Fourteenth Amendment and the Bill of Rights to the United States Constitution was violated, resulting from the wrongful and false arrest, malicious prosecution, and wrongful imprisonment of the plaintiff's father, which constituted an intentional and willful disregard for such individual's natural family members, including the plaintiff, Cynthia Morales.

    2.  As to the Second Cause of Action, a declaration that Plaintiff's fundamental right to live with her father, plaintiff's fundamental right to engage in familial relations with her father; plaintiff's fundamental right to live with her father as a related person; and plaintiff's fundamental right to liberty under the Fourteenth Amendment and the Bill of Rights to the United States Constitution was violated, resulting from the wrongful and false arrest, malicious prosecution, and wrongful imprisonment of the plaintiff's father, which constituted an intentional and willful disregard for such individual's natural family members, including the plaintiff, Cynthia Morales, thereby constituting a violation of plaintiff's civil rights, pursuant to 42 U.S.C. §1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985; and 42 U.S.C. § 1986.

    3.  As to the Third Cause of Action, a declaration that defendants engaged in grossly negligent and reckless conduct which resulted in the plaintiff having suffered

emotional distress, emotional trauma and psychological injury.

4.  As to the Fourth Cause of Action, a declaration that defendants  engaged in intentional and deliberate conduct which resulted in the plaintiff having suffered emotional distress, emotional trauma and psychological injury

5.  As to the Fifth Cause of Action, a declaration that Plaintiff's fundamental right to live with her father, plaintiff's fundamental right to engage in familial relations with her father; plaintiff's fundamental right to live with her father as a related person; plaintiff's right to the intimate association of her father; and plaintiff's fundamental right to liberty, pursuant to New York State law, was violated, resulting from the wrongful and false arrest, malicious prosecution, and wrongful imprisonment of the plaintiff's father, which constituted an intentional and willful disregard for such individual's natural family members, including the plaintiff, Cynthia Morales.

6.  As to the Sixth Cause of Action, a declaration that the defendant, City of New York, is liable for its agents' state law tort of false arrest, malicious prosecution and wrongful imprisonment under the doctrine of respondeat superior.

(B)     Compensatory damages in an amount to be fixed at trial;

(C)     By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages in an amount to be fixed at trial;

(D)     An award to Plaintiff of the costs and disbursements herein;

(E)     Such other and further relief as this Court may deem just and proper.


Dated:          Brooklyn, New York
                May 22, 2014

DAVID M. HARRISON, ESQ./ DH6188
Attorney for Plaintiff
CYNTHIA MORALES
Office & P.O. Address
48 Willoughby Street
Brooklyn, New York  11201
(718) 243-2109