USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/06/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                       :
CYNTHIA MORALES,                                                       :
                                                                       :
                          Plaintiff,                                   :     14-CV-2896 (JMF)
                                                                       :
         -v-                                                           :     OPINION AND ORDER
                                                                       :
CITY OF NEW YORK et al.,                                               :
                                                                       :
                          Defendants.                                  :
                                                                       :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case is one of seven civil rights suits pending before this Court arising out of prosecutions in the 1990s for a pair of murders in the Bronx. Six people were convicted in New York State court of one or both of the murders, but all of their convictions have since been overturned, in part as a result of evidence that points to others as the perpetrators of at least one of the murders. All six of those criminal defendants have since brought suit against members of the New York City Police Department ("NYPD") and other Defendants, alleging various violations of their constitutional rights. In one case, initially brought by Israel Vasquez, the Court recently denied summary judgment to the defendants, *see Vazquez v. City of New York*, No. 10-CV-6277 (JMF), 2014 WL 4388497 (S.D.N.Y. Sept. 5, 2014), and the parties are all but ready for trial. The remaining cases, brought by Eric Glisson (now known as Eric Field), Michael Cosme, Cathy Watkins, Carlos Perez, and Devon Ayers, were filed earlier this year and are now in discovery. *See Watkins v. City of New York*, 14-CV-887 (JMF); *Field v. City of New York*, 14-CV-1378 (JMF); *Cosme v. City of New York*, 14-CV-1653 (JMF); *Perez v. City of New York*, 14-CV-1654 (JMF); *Ayers v. City of New York*, 14-CV-1655 (JMF).

The instant case differs from the others in that it is not brought by one of the people who were prosecuted and convicted for the murders.  Instead, the plaintiff is Cynthia Morales, the daughter of Eric Field.  Morales was born only one week before the murder for which her father was convicted and incarcerated for nearly eighteen years.  She sues members of the NYPD (together, the "NYPD Officers"), prosecutors from the Bronx District Attorney's Office (together, the "Prosecutors," and, together with the NYPD Officers, the "Individual Defendants"), and New York City (the "City," and, together with the Individual Defendants, "Defendants"), alleging federal civil rights and state tort claims on her own behalf.  (Am. Compl. ¶¶ 8-25, 72-97 (Docket No. 19)).  Specifically, she alleges (1) pursuant to Title 42, United States Code, Section 1983, violation of her constitutional right to intimate association; (2) violations of Title 42, United States Code, Sections 1981, 1985, and 1986; (3) negligent infliction of emotional distress; (4) intentional infliction of emotional distress; and (5) malicious prosecution.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants now move to dismiss the Amended Complaint.  (Docket No. 24).  For the reasons stated below, Defendants' motion is GRANTED.

## BACKGROUND

The facts relevant to this motion, taken from the Amended Complaint and assumed to be true, can be summarized briefly.  *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001).[1]  Plaintiff was born on January 12, 1995.  (Am. Compl. ¶ 52).  Five days later, on January 17, 1995, a woman named Denise Raymond was murdered.  (Am. Compl. ¶ 35).  Two days after that, on January 19, 1995, a livery cab driver named Baithe Diop was shot and killed in his taxi

---

[1] The Court's recent opinion in *Vazquez*, familiarity with which is assumed, contains a longer description of the background of this case.  *See* 2014 WL 4388497, at *1-5.

nearby.  (Am. Compl. ¶ 27).  Detectives Michael Donnelly, the lead investigator in the Diop case, and Thomas Aiello, both Defendants here, came to believe that the murders were connected.  (Am. Compl. ¶¶ 14-15, 32, 45).  In the months that followed, they arrested Plaintiff's father and six other people (the five who have brought civil rights suits in this Court and another, Charles McKinnon, who was later acquitted) for one or both murders.  The state's case against the criminal defendants was based, in large part, on the testimony of a homeless drug addict, Miriam Tavares, who claimed to have witnessed the Diop murder through her bathroom window, and the testimony of Cathy Gomez, who was sixteen years old at the time.  (Am. Compl. ¶¶ 33-34, 39, 45, 49).  Gomez has since recanted her testimony, and claimed that Defendants fed her details of the crimes.  (Am. Compl. ¶ 35).  More generally, Plaintiff (like the plaintiffs in the other cases) alleges that Defendants induced or coerced Tavares and Gomez to provide false testimony.  (Am. Compl. ¶¶ 33-39).  Plaintiff's father was convicted in 1997, when Plaintiff was two years old, and sentenced to twenty-five years to life in prison.  (Am. Compl. ¶¶ 51-52).

Field filed a direct appeal, a *pro se* motion for new trial, and a federal habeas petition, all of which were unsuccessful.  (Am. Compl. ¶ 54).  While he was incarcerated, Field nonetheless continued his efforts to prove his innocence.  (Am. Compl. ¶ 55).  In May 2012, an investigator with the United States Attorney's Office for the Southern District of New York, John O'Malley, received a letter that Field had written.  (Am. Compl. ¶ 56).  O'Malley matched the murder's description to a 2003 confession made by two men, Jose Rodriguez and Gilbert Vega, in connection with a cooperation and plea agreement.  (Am. Compl. ¶¶ 27, 56-57).  Armed with an affidavit from O'Malley, Field sought an order vacating the judgment of conviction and dismissing the indictment.  (Am. Compl. ¶ 58).  In October 2012, after the Bronx District Attorney's Office "reinvestigated" the murder in preparation for an evidentiary hearing on

3

Field's motion, the District Attorney's office consented to an order conditionally vacating the conviction, at which point Field was released from jail. (Am. Compl. ¶¶ 59-60). In December 2012, Glisson's conviction was vacated and the indictment dismissed. (Am. Compl. ¶ 61).

On January 10, 2014, Plaintiff filed this lawsuit in the Supreme Court of the State of New York, Bronx County. (Notice of Removal (Docket No. 2) ¶ 1). On April 23, 2014, Defendants removed the case to this Court. (Docket No. 2). Thereafter, Plaintiff filed an Amended Complaint (Docket. No. 19), which Defendants now move to dismiss. (Docket No. 24).

## DISCUSSION

A motion pursuant to Rule 12(b)(6) challenges the sufficiency of the allegations in the complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive such a motion, the plaintiff's complaint must, as a general matter, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### A.     Claims Against the Prosecutors for Damages

As an initial matter, all of Plaintiff's claims against the Prosecutors for money damages must be dismissed. To the extent that she is suing them for damages in their official capacities, her suit is plainly barred by the Eleventh Amendment. *See, e.g.*, *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). And to the extent she is suing them in their personal capacities, her suit is

4

barred by absolute prosecutorial immunity. The law is clear that "'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution . . . is immune from a civil suit for damages'" under both federal and state law. *Shmueli v. City of N.Y.*, 424 F.3d 231, 236, 238 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 431 (1976)). Absolute immunity extends to acts such as "initiating a prosecution and presenting the case at trial" or at other court proceedings. *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995). It also applies to "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also, e.g.*, *Watson v. Grady*, No. 09-CV-3055 (KMK), 2010 WL 3835047, at *16 (S.D.N.Y. Sept. 30, 2010) (holding that defendant prosecutors were entitled to "absolute immunity for their professional evaluation of the evidence and subsequent decision to indict Plaintiff"). By contrast, "when a prosecutor . . . performs the investigative functions normally performed by a detective or police officer, he is eligible only for qualified immunity." *Watson*, 2010 WL 3835047, at *15 (internal quotation marks omitted); *see also, e.g.*, *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012).

Here, to the extent that Plaintiff even alleges the personal involvement of the Prosecutors at all, she complains only about actions that each Prosecutor took in his or her "role as an advocate." *Hill*, 45 F.3d at 662. Most of Plaintiff's allegations relate to the Prosecutors' alleged failure to investigate evidence that contradicted Tavares's account. (*See, e.g.*, Am. Compl. ¶¶ 49, 50). Such allegations, however, are nothing more than a challenge to the Prosecutors' "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial," acts for which they are absolutely immune. *Buckley*, 509 US at 273; *see also Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (holding that absolute immunity protects

prosecutors who conspire to present false evidence at trial).  Plaintiff also alleges that the Prosecutors "willfully ignored" the contents of a security videotape from Raymond's workplace that would have "destroyed the credibility" of some of the prosecution's claims.  (Am. Compl. ¶ 45).  But prosecutors are absolutely immune from suit even when they intentionally conceal exculpatory evidence.  *See Imbler*, 424 U.S. at 431 n.34 (holding that prosecutors are absolutely immune even if they "willful[ly] suppress[]" exculpatory information).  Accordingly, all of Plaintiff's claims against the Prosecutors for money damages must be and are dismissed.

**B.     Claims Relating to the Right to Intimate Association**

The Court turns, then, to Plaintiff's principal claim, brought pursuant to Section 1983, that Defendants violated her constitutional right to familial association.  (Am. Compl. ¶¶ 73, 78, 81-82).  There is no dispute that there is a federal constitutional right to intimate association.  *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).  Further, that right "in at least some circumstances protects familial relationships from unwarranted government interference."  *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002).  Consequently, families have, "in general terms, a substantive right under the Due Process Clause 'to remain together without the coercive interference of the awesome power of the state.'"  *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (quoting *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977)).  Nonetheless, government action violates the right only if it is "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection."  *Id*.  The question presented by this case is whether something less than intentional government conduct directed at a familial relationship can constitute a violation of the right to intimate association.

The Court, however, need not answer that question because, even if it can, Defendants here are plainly entitled to qualified immunity from Plaintiff's claims. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (making clear that a court may, in its own discretion, refrain from determining whether a constitutional right has been violated and instead move directly to the question of qualified immunity). Qualified immunity shields government officials from civil suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to be "clearly established," a right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Reichle v. Howards*, — U.S. —, 132 S. Ct. 2088, 2093 (2012) (brackets and internal quotation marks omitted); *see Raspardo v. Carlone*, Nos. 12-1686-CV, 12-1870-CV, slip op. at 43 (2d Cir. Oct. 6, 2014). Put another way, existing precedent of the Supreme Court and Second Circuit "must have placed the . . . constitutional question . . . *beyond debate*." *Plumhoff v. Rickard*, — U.S. —, 134 S. Ct. 2012, 2023 (2014) (emphasis added). Finally, a court's determination of whether the right at issue is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *DiStiso v. Cook*, 691 F.3d 226, 229 (2d Cir. 2012) (internal quotation marks omitted).

Applying those standards here, there is no question that Defendants are entitled to qualified immunity. Even today, it is not clearly established that government action with only an indirect or collateral effect on a family relationship (which is all Plaintiff alleges here, as there is no allegation that Defendants even knew that she existed at the relevant times) violates the right to intimate association. Indeed, most if not all courts that have addressed the issue have said that it does not. *See, e.g.*, *Russ v. Watts*, 414 F.3d 783, 790-91 (7th Cir. 2005); *McCurdy v. Dodd*,

7

352 F.3d 820, 827-28 (3d Cir. 2003); *Trujillo v. Bd. Of Cnty. Comm'rs*, 768 F.2d 1186, 1189-90 (10th Cir. 1985); *Kogut v. Cnty. of Nassau*, No. 06-CV-6695 (JS), 2009 WL 2413648, at *14-*15 (E.D.N.Y. Aug. 3, 2009). Remarkably, in arguing otherwise, Plaintiff relies on a Seventh Circuit holding that was expressly overruled. (*See* Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss Compl., Pursuant Fed. R. Civ. P. 12(b)(6) ("Pl.'s Mem.") (Docket No. 27) 12-13 (citing *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), which was expressly overruled by *Russ*, 414 F.3d at 791)). Plaintiff also points to *Patel*, in which the Second Circuit observed that it had "never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association," 305 F.3d at 137, and that the Court "d[id] not believe" that "such a strict standard . . . f[ound] support in . . . any of [the Second Circuit's] precedent," *id.* But to say that the Court has never held that a challenged action *must* be directed at a protected relationship to infringe the right is not the same as saying that the right *can* be violated indirectly. Moreover, the Court's language was plainly dictum, as the plaintiff in *Patel* alleged that the defendants *had* "directly assaulted" his relationship with his family. *Id.* Thus, the Court did not establish, let alone clearly establish, what kinds of government actions, if any, that are not specifically intended to harm a person's family relationships infringe that person's constitutional rights. Accordingly, even if Plaintiff has alleged a constitutional violation of the right to intimate association, Defendants are entitled to qualified immunity.

C.     **Claims Pursuant to Sections 1981, 1985 and 1986**

Plaintiff's remaining federal claims against the Individual Defendants, under Sections 1981, 1985(3), and 1986, are even more easily dismissed.[2] To state a claim for violation of any

---

[2]     Although the Amended Complaint alleges a violation of Section 1985, without specifying a particular provision, in their briefing on Defendants' motion the parties discuss only Section

8

of those statutes, Plaintiff must allege, among other things, an intent by Defendants to discriminate on the basis of race. *See, e.g.*, *Mian* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087-88 (2d Cir. 1993) (holding that to prevail on a Section 1981 claim, a plaintiff must show "an intent to discriminate on the basis of race by the defendant"; to prevail on a Section 1985(3) claim, a plaintiff must show that the defendants were "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus"; and that "a § 1986 claim must be predicated upon a valid § 1985 claim" (internal quotation marks omitted)).  Here, however, Plaintiff does not even come close to doing so.  In fact, she does not even allege in her Amended Complaint that she (or her father) is a member of a racial minority, let alone that Defendants discriminated against her (or her father) on that basis.  Plaintiff acknowledges this gap, but argues that "defendants' counsel is well aware that [Field] is an African/American individual, and therefore a member of a 'racial minority.'"  (Pl.'s Mem. 21).  But that is plainly irrelevant, as Plaintiff cannot amend her already amended complaint "by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."  *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013).  Plaintiff also contends that she cannot know the extent of Defendants' racial animus, if any, in the absence of discovery.  (Pl.'s Mem. 22).  But that is exactly the type of argument that the Supreme Court has rejected.  *See Iqbal*, 556 U.S. at 678-79 ("[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Accordingly, Plaintiff's claims pursuant to Sections 1981, 1985, and 1986 must be and are dismissed.

---

1985(3), which is the provision that could most plausibly apply in this case.  Accordingly, the Court will treat Plaintiff's Section 1985 claim as a claim under Subsection (3).

**D.      Claims for Declaratory Relief and Municipal Liability**

Although the foregoing disposes of most, if not all, of Plaintiff's federal claims, the Court must briefly address two additional points before turning to the state law claims.  First, Plaintiff appears to be seeking declaratory relief under Section 1983 (Am. Compl. ¶¶ 98-99), which would not be barred by the Individual Defendants' various immunities.  *See, e.g.*, *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736 (1980) (noting that prosecutorial immunity does not extend to injunctive suits); *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (noting that the Eleventh Amendment does not bar suits against a state official acting in his official capacity for prospective relief); *Adler v. Pataki*, 185 F.3d 35, 47 (2d Cir. 1999) ("Qualified immunity shields the defendants only for claims for monetary damages and does not bar actions for declaratory or injunctive relief.").  Nevertheless, given the dismissal of Plaintiff's claims for damages against the Individual Defendants, her claims for declaratory relief must also be dismissed.  Plaintiff asks the Court to declare that her rights were violated by the "wrongful and false arrest, malicious prosecution, and wrongful imprisonment" of her father.  (Am. Compl. ¶¶ 98-99).  In doing so, however, she asks the Court only to recognize a past wrong, which, in the context of declaratory relief, does not in itself "amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *see also LeDuc v. Tilley*, No. 05-CV-157 (MRK), 2005 WL 147533, at *7 (D. Conn. 2005) (dismissing a claim for declaratory relief against a defendant with absolute immunity when the claim for declaratory relief was "intertwined" with the claim for money damages); *Ippolito v. Meisel*, 958 F. Supp. 155, 165

(S.D.N.Y. 1997) ("[C]ourts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs.").[3]

Second, Plaintiff appears also bring a claim against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Am. Compl. ¶¶ 73, 79). It is well established, however, that, in order to establish municipal liability for unconstitutional acts by municipal employees, a plaintiff must show that the violation of her constitutional rights resulted from a municipal policy, custom, or practice. *See Monell*, 436 U.S. at 690-91. Plaintiff states in her Amended Complaint that the City (1) "permitted and tolerated a pattern and practice of wrongful and unreasonable conduct rendered by NYPD officers and police detectives," (Am. Compl. ¶ 68); and (2) "maintained a system of review of prosecutorial misconduct which is so untimely and cursory as to be ineffective; and permitted and tolerated a pattern and practice of wrongful and unreasonable prosecutorial conduct." (Am. Compl. ¶ 70). But "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985). And although Plaintiff does allege a "pattern and practice" of unconstitutional behavior, she does not allege any facts to support her conclusory assertions. Such "'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original), are plainly insufficient. *See, e.g.*, *Baines v. City of New York*, No. 10-CV-9545 (JMF), 2014 WL 1087973,

---

[3] Even if Plaintiff's claims for declaratory relief were cognizable, the Court would decline to hear them because declaratory relief would neither clarify the legal issues nor offer relief from uncertainty in the circumstances presented here. *See Henderson v. Fischer*, No. 10-CV-2182 (PAC) (HBP), 2012 WL 137872, at *8 (S.D.N.Y. Jan. 18, 2012) (declining to hear a claim for declaratory judgment when defendants were entitled to qualified immunity on all claims for damages).

at *3 (S.D.N.Y. 2014) ("[A]bsent extremely severe circumstances, a plaintiff must allege facts — other than those giving rise to individual liability — supporting an inference that the municipality has an unconstitutional policy.").

### E.     State Law Claims

Finally, the Court addresses Plaintiff's state law claims.  Generally, when a plaintiff's federal claims are dismissed before trial, her state law claims should be dismissed as well.  *See* 28 U.S.C. § 1367(c); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994).  But dismissal is not "absolutely mandatory."  *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988).  Instead, a district court may maintain jurisdiction where "the 'values of judicial economy, convenience, fairness, and comity' support the exercise."  *Delaney v. Bank of Am. Corp.*, — F.3d —, 2014 WL 4377587, at *5 (2d Cir. 2014) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Here, although all of Plaintiff's federal claims have been dismissed, her remaining claims arise out of the same set of facts on which Field and his original criminal co-defendants have based their lawsuits, one of which has already survived a motion for summary judgment.  *See, e.g.*, *Vasquez*, 2014 WL 4388497; *cf. Cinevert v. Varsity Bus. Co.*, No. 12-CV-1223 (RRM) (VVP), 2014 WL 4699674, at *3 (E.D.N.Y. Sept. 22, 2014) (retaining supplemental jurisdiction over state law claims against one defendant in part because federal claims remained against another defendant).  Further, far from "turn[ing] on novel or unresolved questions of state law," *Delaney*, 2014 WL 4377587, at *5 (internal quotation marks omitted), Plaintiff's state law claims are easily rejected based on well-established principles.  Accordingly, deciding these claims now — as the Court elects to do — "will save future, needless litigation in state court."  *Cinevert*, 2014 WL 4699674, at *3; *see also, e.g.*, *Sullivan v. Chappius*, 711 F. Supp. 2d 279, 286 (W.D.N.Y. 2010) (holding that "it would hardly promote the interests of fairness or judicial

economy to leave the door open for plaintiff to refile" a state law claim in state court when the claim was "so obviously lacking in merit").

The Court turns, then, to the merits of Plaintiffs' state law claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and malicious prosecution, as well as her *respondeat superior* claim against the City.  (Am. Compl. ¶¶ 83-97).  All border on frivolous.  First, Plaintiff's claims for intentional infliction of emotional distress and malicious prosecution fail for essentially the same reason: She does not allege that any of Defendants' conduct was directed at her.  *See Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (holding that to state a claim for malicious prosecution under New York law, a plaintiff must prove "the initiation and continuation of a criminal proceeding *against plaintiff*" (emphasis added)); *Garland v. Herrin*, 724 F.2d 16, 18 (2d Cir. 1983) (holding that the right to recover for emotional distress under New York law does not extend to "bystanders"); *see also Landon v. N.Y. Hosp.*, 101 A.D.2d 489, 491 (N.Y. App. Div. 1st Dep't 1984) (recognizing that, with respect to claims for emotional injuries, if "foreseeability is held to create or define a duty as a foundation for liability, it may well open our courts to an inundation of claims for emotional injuries extending far afield of the epicenter of the injury").  Second, Plaintiff's negligent infliction of emotional distress claim fails because she never alleges that she was threatened with physical harm.  *See, e.g.*, *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000).  Finally, because Plaintiff has not demonstrated any basis for liability on the part of any of the City's agents or employees, her *respondeat superior* claim also fails.  *See, e.g.*, *Velez v. City of New York*, 730 F.3d 128, 137 (2013) (noting in context of *respondeat superior* liability that if employee was not liable, "there is no basis for imposing liability on the employer"); *Maldonado v. City of New York*, No. 11-CV-3514 (RA), 2014 WL 787814, at *13 (S.D.N.Y. Feb. 26, 2014).

## CONCLUSION

Assuming that Field was wrongfully prosecuted and imprisoned, there is no doubt that Plaintiff herself suffered harm through the resulting separation from her father for most, if not all, of her childhood. But not every harm gives rise to a legal claim, and based on well-established legal principles, Plaintiff's claims in this case are plainly meritless, if not worse. Accordingly, notwithstanding the Court's sympathy for Plaintiff's plight, Defendants' motion to dismiss is GRANTED, and the Amended Complaint is dismissed in its entirety.

The Clerk of Court is directed to terminate Docket No. 24 and to close this case.

SO ORDERED.

Date: October 6, 2014
New York, New York

_____
JESSE M. FURMAN
United States District Judge